# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANTHONY JAMES CARTER,**
        **Plaintiff,**

**-vs-**                                                                       **Case No. 6:08-cv-1609-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**
        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has been requested but is not deemed beneficial in this case.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

#### A.    **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on September 27, 2005. R. 83-87. He alleged an onset of disability on August 5, 2005, due to HIV infection, genital herpes, affective/mood disorder, pain in his left hip, and vision problems. R. 21-22, 101. His applications were denied initially and upon reconsideration. R. 21. Plaintiff requested a hearing, which was held

on March 18, 2008, before Administrative Law Judge Robert Droker (hereinafter referred to as "ALJ"). R. 398-421. In a decision dated April 14, 2008, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-20. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 8. The Appeals Council denied Plaintiff's request on July 30, 2008. R. 4. Plaintiff filed this action for judicial review on September 18, 2008. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was 40 years old at the time of the ALJ's decision; he had attended school through the eleventh grade, then obtained a general equivalency diploma. R. 83, 106. Plaintiff reported past relevant work experience as a head cook, from 1993 to 2005. R. 101-02, 173, 413.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff suffers from HIV infection, genital herpes, affective/mood disorder, pain in his left hip, vision problems.[1] R. 21-22, 101. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from HIV, herpes, fibromyalgia[2] and affective disorder, which were "severe" medically determinable impairments, but not impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with certain additional restrictions. R. 16-18. In making this

---

[1] The Commissioner adds to the list of Plaintiff's impairments "substance addiction disorder" and that "[u]nder relevant law, Plaintiff cannot be found eligible for disability benefits based on drug or alcohol addiction," citing the applicable regulations, and "[t]he medical evidence documents several references to cocaine use and alcohol dependence," citing R. 173-74, 184, 271-72. Be that as it may, general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ. *See SEC v. Chenery Corp.,* 318 U.S. 80, 93-95 (1943); *Steele,* 290 F.3d at 941; *Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003); *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001); *Fargnoli v. Massanari,* 247 F.3d 34, 44 n. 7 (3d Cir. 2001). The Court notes that Plaintiff did admit to drinking 12 beers daily and using cocaine two weeks before when Plaintiff began treatment in October 2005, however there is no mention of substance abuse later in the medical records.

[2] Fibromyalgia is not discussed anywhere else in the ALJ's decision and appears to be a typographical error. R. 14.

-2-

determination, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision. R. 17. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 18. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an order-caller, parking lot attendant, or router. R. 19. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 19.

Plaintiff now asserts four points of error. First, he argues that the ALJ and the AC erred by ignoring the side effects of medication on his ability to work. Second, he claims the ALJ erred in posing an incomplete hypothetical to the VE. Third, Plaintiff contends the ALJ erred when he found Plaintiff not disabled based on certain activities of daily living. Fourth, he asserts that the ALJ erred by improperly assessing the opinion of Plaintiff's treating physician. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

**A.  RFC and the treating physician's opinion**

Plaintiff argues that the ALJ should not have found him able to perform light work contrary to the notes in Dr. Warner's file that Plaintiff was disabled and could not perform any work. Plaintiff also asserts that the ALJ erred by improperly assessing the opinion of Plaintiff's treating physician and in finding that he had the RFC to perform other work in the national economy. The Commissioner responds that the ALJ properly discounted Dr. Warner's opinion.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that the ALJ erred by not stating the weight that he gave to Dr. Warner's opinion and the opinion of the state agency physicians. The ALJ clearly discounted Dr. Warner's opinion which he believed was based on "claimant's subjective complaints" and not on objective evidence:

> In November 2005, Dr. Warner indicated that the claimant was physically unable to work. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.[3] As noted above, he was stable on his medication. Further, opinions related to the claimant's functioning comes from the state agency medical consultant who most recently concluded that the claimant had the residual functional capacity to do light work. This opinion is given significant weight as it is supported by the objective medical evidence.

R. 18.

The medical records show that Plaintiff first learned that he suffered from HIV infection in August 2005, when he went to the Emergency Room with symptoms of fatigue, loss of weight, loss of appetite, cough, and a sore throat; he tested positive for HIV. R. 155, 159. On October 3, 2005, Dr. Daniel Warner began treating Plaintiff for HIV with complaints of fatigue, sore throat, and shortness of breath. R. 156, 170-72, 271. Dr. Warner also noted "ongoing active substance abuse" and that Plaintiff "does drink beer on a regular basis 12 a day intermittently. Does report active substance abuse with cocaine last used two weeks ago." R. 271-72. Plaintiff declined counseling or a detox program; he was told to discontinue all substance abuse. R. 272.

At Plaintiff's request, in November of 2005 (one month after Plaintiff started treatment with him), notes from Dr. Warner's office indicate a statement about Plaintiff's inability to work was written because Plaintiff "had applied for food stamps, which mandates that applicants must make 6 (six) attempts a week to seek a job. [Patient] states, at this time, that due to his [decreased] t-cells, he is extremely weak, and physically unable to do this, for now. His contact . . . will accept documentation from this office that he's physically unable to work at this time. He doesn't need to

---

[3]Discussion of the ALJ's findings on Plaintiff's credibility is discussed in detail below.

know what he is sick with, etc." R. 270. There was also a note in the file about Plaintiff's "lawyer will [illegible] call work release yet." R. 270.

Dr. Warner filled out form he dated October 12, 2005 (one week after Plaintiff's very first appointment with him - R. 271) entitled, "Medical Report on Adult With Allegation of Human Immunodeficiency Virus Infection." R. 170. Under "Opportunistic and Indicator Diseases," Dr. Warner checked "Conditions of the Skin or Mucous Membranes" and listed under "Other Manifestations of HIV Infection" that Plaintiff experienced "diarrhea" with three episodes in the same one-year period, each with one month duration. R. 171-72. In remarks, Dr. Warner wrote partially illegible comments, but these included "chronic skin inflamed" and "hepatitis vs. HCV/HBV." R. 172.

November 2005 treatment notes indicate Plaintiff was "tolerating his current prophylactic antibiotic therapy" and was "ready to initiate highly active antiretroviral therapy." R. 268. In February 2006, Plaintiff complained of loose stool but denied diarrhea; he was stable on his current therapy and "happy with his response." R. 261. As the Commissioner points out, Dr. Warner's subsequent records demonstrate Plaintiff improved with medication and, by February of 2006, his HIV was characterized as "clinically asymptomatic." R. 244, 257, 261, 321, 329, 336, 342. In April 2006, Plaintiff complained of left hip pain, but he reported feeling "clinically well" and his appetite and weight were up; Dr. Warner ordered an MRI. R. 257. The left hip pain continued in October 2006; physical therapy was ineffective and Celebrex was only minimally effective, an "orthopedic consult was pending." R. 246. Plaintiff missed a couple of doses but was otherwise compliant with his antiretroviral therapy and his HIV was asymptomatic; he was counseled on compliance. R. 244. By January 2007, the Health Department was trying to find an orthopedic provider for a consultation. R. 230. There are no further mentions of diarrhea complaints until February 2007, but even then, Dr.

Warner believed it to be "most likely viral in nature." R. 229. By April 2007, Dr. Warner was still having difficulty locating an orthopedic provider for Plaintiff's hip pain, but Ultram at night was controlling his pain. R. 225. In August 2007, Dr. Warner noted that Plaintiff had "a history of L-spine DJD which [was] the referring pain to that left hip." R. 224. Plaintiff had missed a "dose or two" of his medication; the Ultram was no longer working for his hip so he was switched to Darvocet. R. 22. Plaintiff was prescribed a series of drugs to treat the HIV symptoms, including Acyclovir, Diflucan, Kaletra, Trizivir, and Mepron. R. 133. Dr. Warner did not specifically note any complaints related to medication side-effects in his treatment notes.

The ALJ appropriately discounted Dr. Warner's opinion that Plaintiff was unable to work. Dr. Warner, after just one appointment with Plaintiff indicated that Plaintiff had had diarrhea three times for a one month each time over the course of a year, which must have been based on Plaintiff's subjective complaints because Dr. Warner had just begun treating Plaintiff and had no records of such complaints. Once Plaintiff successfully began the antiretroviral medication regimen, he became clinically asymptomatic. As to Plaintiff's left hip pain, Ultram controlled the pain for a while, and when that ceased working, Dr. Warner switched Plaintiff to Darvocet. There is no evidence in the medical records that the medications did not eventually control Plaintiff's pain. The objective medical records are precisely the information that the ALJ is to consider in reaching his determination. The ALJ also appropriately relied on the two non-examining reviewing physicians' opinions (R. 289-96; R.297-310), which were based on the objective medical evidence in the file as of December 2007. Accordingly, in this case the ALJ's decision was based on substantial evidence.

**B.    Credibility re: side effects and activities of daily living**

Plaintiff asserts that the ALJ and AC erred in ignoring the side effects of medication on his ability to work. He also argues that the ALJ erred when he found Plaintiff not disabled based on certain activities of daily living, which were of short duration.

Although the ALJ did not refer to the Eleventh Circuit's standard, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 17. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The undersigned finds the claimant's allegations regarding his symptoms and limitations not credible to the extent he claims he is precluded from all work activity. The objective medical evidence in the record fails to establish an underlying medical condition that could reasonably be expected to produce incapacitating limitations. The claimant was diagnosed as being HIV + in October 2005. At that time, he complained of fatigue, sore throat, and shortness of breath. Once he began treatment, his records show that his condition was stabilized with antiretroviral therapy. The claimant admitted that the medication does help. Additionally the evidence shows that the claimant has not been hospitalized for treatment of his condition. The claimant has been diagnosed with associated hip pain, but this condition has been treated

> conservatively. He indicated that he used a can to ambulate because of the hip pain. However, the cane was not prescribed to the claimant by his doctor. Diagnostic testing showed that he had a labral tear in hip. He also admitted that the can lift up to 35 pounds. Despite the claimant's allegations of concentration deficits, the evidence shows that he has had limited treatment for mental impairments. Additionally, during the hearing, the claimant indicated that he did not have emotional problems. Although the undersigned recognizes that the claimant has some degree of pain, the objective and other evidence simply does not establish that the pain is as disabling as the claimant alleges.
>
> The claimant's credibility is further diminished by her [sic] inconsistent statements regarding his activities of daily living that include cooking, cleaning, and caring for his own self-care needs. Such level of activity is not consistent with a complete inability to work.

R. 17-18.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that the ALJ ignored Plaintiff's testimony about the side effects he experiences from medication, although the ALJ included the testimony – "the side effects of his medication include vision problems, dizziness and headaches" (R. 17) – in his discussion of Plaintiff's RFC.

In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints of side effects from his medications, principally because once Plaintiff started on the antiretroviral medications, his condition improved (after late 2005). Plaintiff rode a bike, read, watch TV, and could cut the lawn. R. 115, 119, 141, 186- March 2006). These are activities of daily living that

require concentration and are of more significant duration than those cited by Plaintiff. Dr. Warner's treatment notes and the objective medical records, as discussed above, also do not indicate debilitating side effects from Plaintiff's medications. Accordingly, the ALJ's reasons are supported by substantial evidence.

Plaintiff also argues that the AC erred by not granting review based on information sheets from Plaintiff's pharmacy which purportedly show the side effects of Plaintiff's medications (R. 364-74). Plaintiff underlined the side effects he experiences, according to Plaintiff's brief. Doc. No. 13 at 6-7. Plaintiff argues these pharmacy information sheets are "new" evidence because they were not provided to the ALJ prior to the date of his decision, and the evidence is "material" because they show the potential side effects of Plaintiff's medications on his ability to work; thus, the AC should not have ignored this new evidence.

The AC denied Plaintiff's request for review of the ALJ's decision, giving no recognition to this "new" evidence submitted by Plaintiff. These pharmacy information sheets merely list the *potential* side effects of various medications. Plaintiff was asked specifically at the hearing about any side effects he was experiencing, and the ALJ took his testimony into consideration. R. 402-03 (dizziness and headaches, blurred vision). Plaintiff fails to explain why the pharmacy information sheets for medications that he had been on at the time of the hearing and well before the ALJ's decision are "new" evidence that could not have been provided to the ALJ prior to his decision. Plaintiff concedes that the AC stated that it considered all of the information in the file in making its decision to deny review. Doc. No. 13 at 9 (citing R. 4). Assuming *arguendo* that the evidence was "new and material," the AC appropriately denied review or remand.

    **C.**    **Other work in the national economy**

Plaintiff contends that the ALJ erred in posing an incomplete hypothetical to the VE. Plaintiff contends that the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, and vision problems, dizziness, and headaches from his medications, yet did not include these limitations in the hypothetical to the VE. Doc. No. 13 at 10 (citing R. 15, 17, 417-19).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

As the Commissioner points out, the ALJ posed a hypothetical question to the VE assuming an individual with Plaintiff's relevant vocational characteristics with the ability to perform light work with additional restrictions including: a sit/stand option; no work climbing ladders or at unprotected heights; no operation of heavy moving machinery; no unusual stress; occasional bending, crouching, kneeling, stooping, or squatting; no crawling; no operation of foot controls with the left leg; and use of a monocane. R. 417-19. In response to the ALJ's hypothetical, the VE indicated that such an individual could perform work at the light level as an order caller, parking lot attendant, and router, and at the sedentary level as an addresser. R. 419-20. The VE testified that more than 10,000 of these jobs existed in the state of Florida. R. 419. As discussed in detail above, the ALJ properly discounted Plaintiff's subjective complaints, thus including only those impairments that the ALJ found supported by the medical records. Therefore, the hypothetical to the VE, and the VE's response appropriately established that there were a significant number of jobs that a person with the limits identified by the ALJ could perform. Accordingly, the ALJ found Plaintiff not disabled.

## *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to a degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 21, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record